IN THE UNITED STATES DISTRICT COURT

FILED

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES DISTRICT COURT

KELLI MURTAGH and JOHN MURTAGH,

NOV 2 7 2000

Plaintiffs,

v.

CLERK

JEFF LANDERS, and the
BOARD OF COUNTY COMMISSIONERS OF BERNALILLO COUNTY,

Defendants.

CIV 00      1679

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
## FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS

COME NOW Plaintiffs, by and through their attorneys NICHOLS & OLIVER, P.C.

(Shannon L. Oliver and Carolyn M. Nichols) and CATES & HAMMEL, P.C. (Kathryn Hammel),

and for their Complaint state as follows:

1.      Defendants discriminated against Plaintiff Kelli Murtagh, a County Fire Fighter and

Paramedic, on the basis of gender and pregnancy, and retaliated for the protected speech

of her husband, John Murtagh.

2.      This is a civil action for damages and equitable relief brought under the Constitution of the

United States of America, 42 U.S.C. Sections 1983 and 1988, the federal Declaratory

Judgment Act, 28 U.S.C. Section 2201 *et seq.*, Title VII of the Civil Rights Act of 1964,

42 U.S.C. Section 2000e *et seq.*, including the Pregnancy Discrimination Act, the

Constitution of the State of New Mexico, and the New Mexico Declaratory Judgment

Act, NMSA 1978, 44-6-1 *et seq.*

### JURISDICTION, VENUE AND EXHAUSTION

3.      This Court has jurisdiction over the federal civil rights claims pursuant to 28 U.S.C.

Sections 1331 and 1343(a)(4), and over the pendent state tort claims pursuant to 28

U.S.C. Section 1367.

4.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b).

5.     Plaintiff had exhausted her administrative remedies and has timely filed this suit.  A copy

of Plaintiff's "right to sue" letter from the EEOC is attached herewith.

## PARTIES

6.     Plaintiffs Kelli and John Murtagh reside in Bernalillo County in the State of New Mexico.

7.     Defendant Board of County Commissioners of Bernalillo County (hereinafter "County") is

a duly constituted municipality and subdivision of the State of New Mexico, and a

"person" subject to suit herein.

8.     At  all times material hereto, Defendant Jeff Landers acted under color of law, within the

scope of his public employment, and as a policy-maker for the County as a County official.

## FACTUAL RECITATION

9.     Plaintiffs are highly trained, skilled and experienced Fire Fighters and Paramedics.

10.    Both volunteered for the Bernalillo County Fire Department (hereinafter "County") before

becoming employed as full-time paid Fire Fighters and Paramedics.  Plaintiff Kelli

Murtagh joined the Bernalillo County Fire Department (hereinafter "County") as a full-

time Fire Fighter/Paramedic in August of 1994.  Plaintiff John Murtagh joined the County

as a full-time Fire Fighter/Paramedic in April of 1996.

11.    Women are under-represented in the fire department chain of command and have

traditionally had to go to greater lengths and face greater obstacles to prove themselves as

capable fire fighters.  In addition, upon information and belief, the County has had and still

2

has no adequate provision for maternity leave or pregnancy accommodation for its female fire fighters.

12.    Over time, Plaintiff Kelli Murtagh earned the respect and trust of her colleagues, and became a trainer and mentor for others.  Both she and Mr. Murtagh have been commended for their bravery and service to the County.

13.    Plaintiffs met through their service to the County, fell in love and married in May of 1997. Fire Chief Santos Baca attended the wedding, as did many of their colleagues. One of the groomsmen at the wedding was County fire fighter Mike Salazar.

14.    Because Plaintiffs are assigned to different units, with differing chains of command, their marriage was no obstacle to continued employment with the County.

15.    Since their marriage, Plaintiffs have been trying to have a baby.  Ms. Murtagh had children from a prior marriage, but having another child required reversal of her tubal ligation and extensive, intrusive fertility treatments.

16.    Plaintiffs candidly discussed their hopes and dreams with Fire Chief Santos Baca.  He knew about the dramatic efforts Plaintiffs were making to have a baby.  Chief Baca promised Plaintiffs that if their efforts to become pregnant were successful, he would immediately place Ms. Murtagh on a 50/hour/week light duty schedule as was the policy and practice for any fire fighter with a temporary disability or need for medical accommodation.

17.    Fire Fighters and Paramedics routinely face serious and sometimes life-threatening hazards on the job, including but not limited to smoke and fire danger, exposure to chemicals and hazardous materials, high speed and emergency transport, and injured, distraught,

3

panicked, or drug-impaired victims and family members.

18.  All of these hazards pose a heightened risk to a pregnant Fire Fighter/Paramedic and her

embryo or fetus.

19.  The first twelve weeks of pregnancy are a particularly critical time of major organ

formation in the life of a human embryo.  During this time in particular all women are

counseled to avoid unnecessary exposure to hazards.

20.  In January of 1999, after approximately four and a half years of service to the County,

Plaintiff learned that she was pregnant.  Because Ms. Murtagh was over the age of 35,

and because she had a history of complications in pregnancy from her prior marriage,

Plaintiff's pregnancy was categorized by her physician as high risk.

21.  Plaintiffs informed the County of the pregnancy right away.  By this time, Glen Vinke had

replaced Santos Baca as Fire Chief.

22.  Mr. Murtagh discussed with Chief Vinke the lack of any provision in the County's policies

for maternity or paternity leave.  Chief Vinke authorized Plaintiff John Murtagh to explore

how other fire departments handled the matter.

23.  Mr. Murtagh followed the Chief's directive and provided a variety of policy materials and

proposals to the County on or about January 21, 1999.

24.  In early February, 1999, Ms. Murtagh made her formal request to the Chief to transfer to

light duty status.

25.  Chief Vinke authorized the light duty status to begin on February 15, 1999, but informed

Plaintiffs that he had been directed by Defendant County Attorney Jeff Landers that light

duty would only be available to Plaintiff if she would take a reduction in hours, from her

4

normal work week in excess of 50 hours, to 40 hours a week, at a significant reduction in pay and benefits.

26. Upon information and belief, male employees requiring light duty status because of an injury or medical condition were not compelled to take a reduction in hours and benefits.

27. Upon information and belief, non-pregnant employees requiring light duty status because of an injury or medical condition were not compelled to take a reduction in hours and benefits.

28. When Plaintiff Kelli Murtagh was previously injured on the job and temporarily required light duty status, she was not compelled to take a reduction in hours or benefits.

29. Upon information and belief, a male fire fighter on light duty status at the same time as Plaintiff's request, in or around February of 1999, was not compelled to take a reduction in hours or benefits.

30. Plaintiffs protested the cut in hours but, having no alternative, Ms. Murtagh began to work the truncated shift on or about February 15, 1999.

31. The next day, Mr. Murtagh met with County officials about the unfairness in singling out pregnant Fire Fighters for truncated light duty hours and to propose more equitable light duty and leave policies based on the materials he had gathered from other fire departments.

32. That afternoon, in further discrimination against Plaintiff Kelli Murtagh and in retaliation for Plaintiff John Murtagh's advocacy, Defendant Landers stripped Ms. Murtagh of her light duty status and ordered her to return to the field.

33. Chief Vinke protested to Defendant Landers that what he was doing was wrong, to no

5

avail.  The Chief issued a memo on or about February 24, 1999 which asserted that

notwithstanding the physician certification Plaintiff had provided, she was to return to the

field pursuant to Defendant Lander's orders.

34.     Defendants stipulated that Plaintiff was only to work on medical emergencies and not fire

emergencies, but this restriction did not address the hazards involved in high speed

emergency transport or in responding to violent or drug-overdosed patients.

35.     Defendants assigned Plaintiff to the busiest station in the County, where Plaintiff was

called out on an average of 10-12 medical emergency calls per shift, 1 or 2 of which on

average involved out-of-control patients.

36.     To make room for Plaintiff at this station, another Fire Fighter/Paramedic was displaced,

and he lodged a protest.

37.     Others on the shift also complained that trying to accommodate Plaintiff would hinder the

unit and distract their focus from serving the public to watching out for Plaintiff's safety.

38.     Because of these protests, rather than simply return Plaintiff to her light duty assignment,

Defendants "floated" Plaintiff to another station where she had both fire and medical

emergency responsibilities.

39.     Plaintiff was called out on a bosque fire where she was assigned to handle pumps in heavy

wood smoke for over five hours.  Plaintiff was forced to choose between jeopardizing the

embryo or abandoning the pumps, placing her colleagues' lives at risk.  Plaintiff stayed

with her duties until the fire was controlled; coughing, spitting and vomiting in the thick

smoke.  Colleagues emerging from the smoke for periodic breaks noted that Plaintiff

needed to get out of the smoke, but were unable to relieve her in their efforts to control

the fire.

40.  Thereafter, Plaintiff lived with the fear that she would miscarry or had harmed the baby.

41.  Plaintiff was called out on a second fire, this time a structure fire, where she worked in smoke for approximately 2-3 hours.

42.  Plaintiffs filed seven grievances pursuant to the terms of the Fire Fighters' Collective Bargaining Agreement with the County, to no avail.  Defendants refused to return Ms. Murtagh to light duty.  To the contrary, Defendants brought a phalanx of legal counsel, including Defendant Landers, to what was supposed to be an informal "step one" grievance hearing.

43.  Finally, in around May of 1999, when Plaintiff was six months pregnant, Defendants agreed to return Plaintiff to light duty work, but again discriminatorily imposed upon her a truncated 40 hour work week.

44.  Plaintiff worked the reduced hours until her unpaid maternity leave began.

45.  Because of the truncated hours, Plaintiff had to use up and was unable to accrue paid vacation, sick or personal days to use for maternity leave.  Plaintiff lost a total of about 232 hours of paid leave time and had nothing left for any maternity leave.  The County had and, upon information and belief, still has no provision for any maternity leave apart from an employee's ordinary vacation, sick or personal days.

46.  As a result, Plaintiff had to seek unpaid administrative leave for her maternity leave, during which she lost her employee status and had to incur additional premium payments to keep her health insurance in force.  Plaintiffs had no income from Ms. Murtagh during the period of her maternity leave.

7

47.  Because of the work stress, Plaintiff's weight gain during her pregnancy was below average and Plaintiff gave birth to a lower weight baby on September 7, 1999 by planned Cesarean section.

48.  After her leave, Defendants returned Plaintiff immediately to full field duties, with no transitional light duty time even though Plaintiff had undergone a Cesarean section, which is major abdominal surgery.

49.  As an actual and proximate result of Defendants' discrimination, retaliation and abuse, Plaintiffs sustained injuries and damages including but not limited to: the deprivation of their constitutional and civil rights; lost income and benefits; financial hardship; strain on the work and trust relationships with their colleagues; fear for the safety of the baby; frustration, anger and emotional distress.

50.  The misconduct of Defendant Landers was outrageous, deliberate, intentional, malicious, reckless, wanton, wilful, oppressive, and deliberately indifferent to Plaintiffs' constitutional rights and safety and the safety of their child, justifying  awards of punitive damages against them.

**COUNT ONE**
**42 U.S.C. SECTION 1983**
**FOURTEENTH AMENDMENT**

51.  Defendant Landers unlawfully discriminated against Plaintiff on the basis of gender/sex.

52.  Defendants cannot meet their burden to prove that their gender-based discrimination was substantially related to any important valid governmental objective.

**COUNT TWO**
**42 U.S.C. SECTION 1983**
**SUPERVISORY LIABILITY**

53.   Defendant Landers breached his constitutional duty of supervision over Defendant Vinke

and/or over Plaintiff's superiors in the field, causing them to violate her rights and

endanger her safety and that of her unborn child.

## COUNT THREE
## 42 U.S.C. SECTION 1983
## POLICY LIABILITY

54.   Defendant County enforced policies, practices, usages or customs of discrimination

against female Fire Fighter/Paramedics on the basis of gender and retaliation against those

who advocated on their behalf.

55.   Alternatively, the unconstitutional acts of Defendant policy-maker Jeff Landers subjects

the County to municipal liability.

## COUNT FOUR
## TITLE VII AND THE PREGNANCY DISCRIMINATION ACT

56.   Defendant County unlawfully discriminated against Plaintiff on the basis of gender/sex

and/or pregnancy.

## COUNT FIVE
## 42 U.S.C. SECTION 1983
## FIRST AMENDMENT

57.   Defendants retaliated against Plaintiffs for Mr. Murtagh's protected speech.

## COUNT SIX
## NEW MEXICO CONSTITUTION
## GENDER DISCRIMINATION

58.   Defendants unlawfully discriminated against Plaintiff on the basis of gender/sex, in

violation of the Equal Rights Amendment and other provisions of Article II of the New

Mexico Constitution.

## COUNT SEVEN
## BREACH OF IMPLIED CONTRACT

59.    Defendants breached former Chief Baca's promises to Plaintiffs that Ms. Murtagh would

receive the standard 50 hours/week light duty during the course of her pregnancy.

60.    As with any contract, this contract imposed on the parties a duty of good faith and fair

dealing in the performance of the contract.  Defendants also breached these duties of good

faith and fair dealing.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

I.    Actual and compensatory damages sufficient to make them whole;

II.    Punitive damages against Defendant Landers sufficient to punish and deter further

wrongdoing;

III.    Equitable relief sufficient to remedy the wrongs and prevent future violations, including a

declaration of the violations of the United States and New Mexico Constitutions;

IV.    Attorneys' fees, expenses, costs, pre-judgment interest and post-judgment interest as

provided by law, and

V.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of six (6).

NICHOLS & OLIVER, P.C.
Shannon L. Oliver
Carolyn M. Nichols
1122 Central Ave. SW
Albuquerque, NM 87102
(505) 224-9499

10

CATES & HAMMEL, P.C.

Kathryn Hammel
219 9th St. NW
Albuquerque, NM 87102
(505) 767-9993

EEOC Form 161 (10/96)                          U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Kelli Murtagh                                From: Equal Employment Opportunity Commission
6608 Hood Road N.W.                                        505 Marquette N.W. Suite 900
Albuquerque, NM 87114                                      Albuquerque, NM 87102

[  ]   *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 390A00497 | John Wright, Federal Investigator | 505 248-5187 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_____                    AUG 3 0 2000
Christella F. Garcia, Enforcement Supervisor              *(Date Mailed)*

Enclosure(s)

cc:   Ms. Renetta Torres, EEO Officer          Respondent: Bernalillo County Fire Department
      Bernalillo County
      One Civic Plaza.
      Albuquerque, NM 87102