IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KELLI MURTAGH and JOHN MURTAGH,

Plaintiffs,

v.                                    CV 00-1679 BB/LFG-ACE

JEFF LANDERS, and the
BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,

Defendants.

### PLAINTIFF'S BENCH MEMORANDUM OF FACTS AND LAW IN SUPPORT OF EQUITABLE, INJUNCTIVE AND DECLARATORY RELIEF SOUGHT IN PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, Kelli Murtagh, by and through counsel, and submits Plaintiff's Bench Memorandum of Facts and Law in Support in support of her request that the Court exercise its equitable powers to enjoin Defendants from imposing its discriminatory modified duty policies on female firefighters who want to have children: Plaintiff Kelli Murtagh is seeking declaratory, equitable and injunctive relief pursuant Title VII of the Civil Rights Act, §1983 of the Civil Rights Act, the Equal Protections Clauses of the United States and New Mexico Constitutions and the federal and state declaratory judgment acts, as follows:

    A.      A modified duty/leave policy that treats female and pregnant firefighters the same as similarly situated male and non-pregnant firefighters; and,

B.  A modified duty/leave policy that does not discrimination based on the parental status, sex or potential pregnancy of a female firefighter.

## FACTUAL SUMMARY

Kelli Murtagh has been a Bernalillo County firefighter since August of 1994. *See Complaint at* ¶ *10.* She is married to John Murtagh who has been a Bernalillo County firefighter since April of 1996. *See Complaint at* ¶¶ *10-13.* Kelli Murtagh became pregnant in January of 1999 and gave birth to her son in September of 1999. *See Complaint at* ¶¶*20, 47.* Kelli Murtagh had discussed with then-Chief Santos Baca the fact that she was planning on becoming pregnant, if possible, and that she wanted to be certain she understood how that situation would be handled with respect to her need for modified duty. His response to her was that he would have treated her the same as a similarly-situated male employee needing to be removed from the field. He stated she would be treated just like everybody else in that circumstance, and that everybody on modified duty could expect to work a 50-hour week, thereby minimizing their cut in pay.

In January of 1999, John Murtagh began actively advocating for the County to allow his pregnant wife and other pregnant firefighters the exact same accommodations that it had always provided to other similarly-situated non-pregnant employees in the way of benefits and modified duty. *See Complaint at* ¶¶ *22-24.* In January of 1999, John Murtagh provided County Fire Chief Vinke with copious written materials to enable the County to develop a Maternity/Paternity Leave policy for firefighters that was fair and legal. *Id.*

In early February of 1999, Kelli Murtagh made her formal request to Chief Vinke to place her on modified duty. *See Complaint at* ¶ *24.* Chief Vinke authorized modified duty to begin on or about February 15, 1999, but informed the Murtaghs that he had been directed by County Attorney

2

Landers that modified duty would only be available to Kelli if she would take a reduction in hours, from her normal work week in excess of 50 hours, to 40 hours a week, at significant reduction in pay and benefits. *See Complaint at ¶ 25.* Non-pregnant and male employees requiring modified duty status had never before been compelled to take a reduction in hours and benefits while on modified duty. *See Complaint at ¶ 26-28.* Bruce Ferguson, a male firefighter on modified duty status in February of 1999 (at the time of Kelli Murtagh's request) worked 50 hour weeks and was not compelled to take a reduction in hours or benefits.

Kelli began working the truncated shift on or about February 15, 1999. *See Complaint at ¶ 30.* The next day, John Murtagh met with Chief Vinke and County Attorney Landers regarding the unfairness of singling out pregnant firefighters for truncated modified duty and proposed a more equitable modified duty and leave policies based on materials that he had gathered from other fire departments around the country. *See Complaint at ¶ 31.* That very afternoon, County Attorney Landers stripped Kelli Murtagh of her modified duty status and ordered her to return to the field. *See Complaint at ¶ 33.* Defendant Landers drafted a memorandum, issued by the Chief, on February 24, 2999, that, notwithstanding the physician certification Plaintiff had provided, she was to return to the field. *See Complaint at ¶¶ 33-34.* Plaintiff Kelli Murtagh was assigned to one of the busiest fire stations, displacing a male firefighter who lodged a protest with the Fire Department. The other firefighters and the lieutenant at the station were uncomfortable with Kelli Murtagh's presence there, as they did not see how she was supposed to act only as a paramedic, and they felt this situation impaired their ability to do their jobs. Due to these problems, Defendant County "floated" Plaintiff to another station where she wound up performing firefighting duties. *See Complaint at ¶¶ 35-39.*

3

Defendant County and Landers forced Kelli Murtagh to fight fires and work in the field while pregnant, placing the couples' unborn child in possible jeopardy and risking Kelli Murtagh's health as well. Defendants knowingly jeopardized the physical safety of Kelli Murtagh and her unborn child as they were placed on notice by physician orders and the materials provided by John Murtagh of the dangers inherit to fighting fires that could have a devastating impact on a pregnant woman and her fetus. A non-pregnant firefighter similarly situated would never have been given such a Hobbsian choice: Either jeopardize the economic well-being of my unborn child and my family by refusing to work in the field, against my supervisor's direct orders to work in the field at the risk of being fired, to ensure our physical health and safety; or, risk the health and physical safety of myself and my un-born child to secure our economic well-being and my position as a full time Bernalillo County firefighter by working in the field, as ordered, where we may suffer great bodily harm while fighting fires. Unfortunately, when the County discriminated against Ms. Murtagh by assigning her to work the field while pregnant, after her request for 50 hours of modified duty had been denied, she actually was faced with a Hobbsian choice: She was faced with a situation in which she risked her own personal safety and that of her unborn child by manning a fire-pump during a fire, rather than jeopardizing the safety of her fellow firefighters by leaving the fire pump. She followed the order's of her Chief rather than the orders of her doctor, because in the heat of the moment she could not abandon her fellow firefighters. During the course of her pregnancy she had to live with the fear that her decision to stay at the fire pump could have harmed her unborn child. *See Complaint ¶ 39.*

Rather than present non-pregnant firefighters with the stress of such Hobbsian choices, the County had always allowed non-pregnant firefighters, similarly situated and requesting modified duty, 50 hours of modified duty with same benefits and hours that Plaintiff had requested and was denied.

4

Firefighters are not highly paid, and to take such a reduction in hours is a serious hardship. Only Plaintiff, pregnant and requesting modified duty, was treated differently and denied her reasonable request. As a result of the County's decision to keep a pregnant woman in the field, Ms. Murtagh suffered emotional duress and loss of wages and benefits.

Plaintiffs filed four grievances pursuant to the terms of the Fire Fighters' Collective Bargaining Agreement with the County, to no avail, that speak for themselves. Defendant County continued to refuse to return Plaintiff to modified duty, but, rather, a compromise solution was reached whereby Plaintiffs' second choice (an alternate schedule at a different station proposed months earlier) was adopted. *See Complaint ¶ 43.* Eventually, in May of 1999, when Plaintiff was approximately 6 months pregnant, Defendants agreed to transfer Plaintiff from the field to an office position where she was physically secure but economically compromised as she was only given a 40-hour work week. *See Complaint at ¶ 43.*

From May of 1999, the Defendants discriminated against Kelli Murtagh by denying her modified leave that had always been granted to non-pregnant firefighters, and by restricting her ability to accrue benefits she would need for her maternity leave (a restriction which had never been imposed on other non-pregnant employees) in violation of her civil rights. Plaintiff, thereby, suffered further work loss and loss of benefits for approximately three months before she took her maternity leave. *See Complaint at ¶¶ 43-46.*

Firefighters working for the Bernalillo County Fire Department have, for at least the last decade, consistently expected that they will receive at least 50 hours per week (or at least 100 hours per pay period) if they need and are placed in a modified duty position (unless they did not want to work that many hours). This expectation has consistently been borne out in practice. There is

absolutely no written policy in any form whatsoever which documents this expectation, nor is there any written directive of any kind which contradicts this expectation. The County has never stated, in writing, that all firefighters who need modified duty (as of February of 1999) will only receive 40 hours per week because of concerns regarding payment of overtime and the Fair Labor Standards Act. Firefighters in general still expect that they would receive 50 hours per week if assigned to a modified duty position, based on their past experiences and expectations. Firefighters who have been forced to work only 40 hours per week, women and pregnant women, while on modified duty (such as Christine Jordan, formerly Womack) since February of 1999 have found this to be an extreme hardship, pushing them beyond the bounds of their budgets and requiring them to supplement their income by using various types of paid leave.

Firefighters who only worked 40 hours per week by choice (because of the physical pain involved in working over 8 hours per day, for example) while on modified duty also found this reduction in pay to be an extreme hardship which could not be endured for long without supplementation of income. David Dryden, a similarly-situated male firefighter (with an injury rendering him temporarily unable to perform all the functions of his job) received 50 hours per week while on modified duty in the summer of 2000. There were at least two other firefighters who received 50 hours per week while on modified duty after Kelli and John Murtagh were told that the County could not put firefighters on modified duty at any more than 40 hours per week per the Fair Labor Standards Act issues.

According to Craig Deal since plaintiff's pregnancy, "Jeff Landers (the head negotiator for the County) and Andres Trujillo have been completely unwilling to negotiate a modified duty policy, giving, basically, the reason that they are 'looking into' whether they can give more than forty hours."

6

In practice no new modified duty policy is in place. What is currently is place is an ad hoc sham policy imposed to discriminate against pregnant female firefighters. A male firefighter has been given more than fifty hours of modified light duty since Plaintiff's pregnancy.

Actually what the Defendant County is doing is telling non-pregnant and male employees that they are still exempt employees and continuing to allow them the 50 hour work week of modified duty, while telling pregnant firefighters not to apply for modified duty positions or if they do don't expect to get more that the 40 hours per the FSLA. Consider for example the affidavit of a pregnant firefighter who was told that it was the "Chief's discretion" as to whether she got light duty, and if she got modified duty it would only be 40 hours per the FSLA, as compared to the affidavit of a male, non-pregnant firefighter who was told he still qualified for 50 hours a week of modified duty. These affidavits alone provide sufficient evidence that defendant's current *ad hoc* modified duty policy is a sham policy to mask unlawful discrimination against pregnant women. As the firefighters will testify, there has been no official modified duty policy adopted since Plaintiff's complaint. *See Plaintiff's Response to Defendants' Motion for Summary Judgment, affidavits attached.*

Further evidence exists: Before Plaintiff got pregnant there was a "gentlemen's agreement" that any firefighter requesting light duty would get a 50 hour work week of light duty. For at least the last ten years, any firefighter in need of modified duty was given the 50 hour work week. Another female firefighter employed by Defendant County, Alycia Reina, still a probationary employee, has become pregnant, and she is now facing discrimination and fears that she may ultimately lose her job.

Plaintiff has standing to request the equitable relief sought herein because she is a women of child bearing years who is still working for Defendant County of Bernalillo Fire Department.

7

Defendant's current ad hoc discriminatory modified duty policy is a continuous policy that acts to deter female firefighters, including Plaintiff, from becoming pregnant. Plaintiff should be allowed to live her dream of having children and of being a firefighter.

## I. LEGAL AUTHORITIES

### A. THE RELIEF SOUGHT IS WITHIN THE COURT'S EQUITABLE AUTHORITIES

The federal district courts have broad discretion to craft injunctive relief which fits the equities in each case. *See e.g., Sears v. Atchison Topeka*, 749 F.2d 1451 (10th Cir. 1984), *cert denied*, 105 S.Ct. 2322 (1985); *EEOC v. Wilson Metal Casket*, 24 F.3d 836 (6th Cir. 1994). The state and federal declaratory judgment acts give courts the power to "declare the rights and other legal relation of any interested party seeking such declaration." 28 U.S.C. §§ 2201-2202.

In this case, Plaintiff claims that Defendant County has caused an adverse or disparate impact on persons of her sex. An adverse or disparate impact is established if an employer uses a particular employment practice, which is neutral in its treatment of different groups on its face, but in fact has a significant adverse effect on the basis of sex. To find an adverse or disparate impact, you do not need to consider whether Defendant intended to discriminate against persons of Plaintiff's sex. The Court may focus on the consequences or results of the employment practice or decision-making process at issue. Plaintiff is not required to identify a particular or specific practice or element of a decision-making process that caused the disparate impact if the practices or elements cannot be separated from the analysis. *See e.g. Wards Cove Packing Co. v. Antonio*, 490 U.S. 642 (1989) and, Title VII of Civil Rights Act of 1964 (42 U.S.C.A. §2000e *et seq.*), 68 A.L.R. Fed. 19 (1998).

In a civil rights action by municipal employee against a municipality, such as Defendant County, the municipality may be considered as a "person" in the event that it has a policy which

allegedly deprives the employee of her constitutional rights. 42 U.S.C.A. §1983; and, *Wieland v. City of Arnold*, 100 F.Supp. 2d 984 (E.D. Mo. 2000). Additionally, the Defendant County of Bernalillo is a "person" within the meaning of the New Mexico Declaratory Judgment Act. *See*, 44-6-1 to 44-6-15 NMSA 1978 (Supp. 2001)(person defined 44-6-3 NMSA 1978). In the event that the jury or the court finds that Defendant County violated Plaintiff's rights to be free from sex or pregnancy discrimination under any of Plaintiff's claims; the Court can craft injunctive and equitable relief that would prevent the continued violation of the constitutional rights of women and pregnant women and which would allow Plaintiff to become pregnant again without having to suffer further discrimination.

The Court has inherent powers to suspend municipal policies that violate constitutional rights. *See e.g.*, *LeGault, supra, U.S. v. Montgomery*, 744 F.2d Supp. 1074 (M.D. Ala. 1989). For example, the courts have enjoin the use of invalid fire fighter employment tests, *see LeGault, supra* at 1492; *Vulcan Pioneers Inc. v. New Jersey*, 832 F.2d 811 (3rd Cir. 1987); *Brunet v. City of Columbus*, 642 F. Supp. 1214 (S.D. Ohio 1986), *cert. denied*, 108 S.Ct. 1593 (1988)(enjoining fire fighter hiring examinations which discriminated against women), or modify a fire fighter employment examination, *Brunet, supra*; or order that a fire fighter test be validated, *Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 640 (1991), or require that a fair test be used. *Darnell v. City of Jasper*, 730 F.2d 653 (11th Cir. 1984). The courts may also exercise their equitable powers to enjoin unfair practices like nepotism, which has been part of the problem here. *See e.g., Thomas v. Washington*, 915 F.2d 922 (4th Cir. 1990).

Compelling the Defendant County to change its discriminatory policies is an appropriate equitable remedy in employment discrimination cases. *See e.g.*, 42 U.S.C. Section 2000e-5(g)(1);

9

*Berkman v. City of New York*, 705 F.2d 584 (2nd Cir. 1983)(mandating hiring of 45 female fire fighters); *Scott v. City of Topeka*, 739 F. Supp. 1343 (D.Kan. 1990)(mandating hiring of a female fire fighter); *see also, Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986); *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515 (11th Cir. 1986).

In this matter the Court has the authority to mandate the adoption of a modified duty policy that does not discriminate against female firefighters who wish to have children.

**Wherefore**, Plaintiff respectfully requests, that the court grant Plaintiff the injunctive, equitable and declaratory relief sought herein.

Respectfully Submitted,

CAROLYN M. NICHOLS
SHANNON L. OLIVER
NICHOLS & OLIVER, P.C.
Attorneys for Plaintiff
1122 Central Avenue, S.W.
Albuquerque, New Mexico 87102
(505) 224-9499 Fax 224-9337

I HEREBY CERTIFY that a true and correct copy of the foregoing has been hand-delivered to opposing counsels of record this 5th day of November, 2001.

SHANNON L. OLIVER