**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KELLI MURTAGH,

    Plaintiff,

v.                                                              CIV No. 00-1679 BB/LFG

BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,

    Defendant.

## MEMORANDUM OPINION AND OPINION
## ON ATTORNEYS' FEES AND EXPENSES

THIS MATTER is before the Court on Plaintiff Kelli Murtagh's ("Murtagh") Motion for Attorneys' Fees and Expenses, filed March 27, 2002 [doc. 103]. After carefully considering the pertinent law and the parties' briefs [docs. 104, 113, 116], along with all attachments and exhibits, including affidavits of Phillip B. Davis, Kathryn Hammel, Carolyn M. Nichols, Shannon L. Oliver, Randi McGinn, Maureen A. Sanders, Agnes Fuentevilla Padilla, and Emily A. Franke [docs. 105-110, 113], the Court finds that the motion should be granted in part and denied in part, as set out below.

### Factual and Procedural Background

On November 27, 2000, Murtagh and her husband John Murtagh filed a civil rights complaint requesting monetary damages and equitable relief under the state and federal constitutions, 42 U.S.C. § 1983 and 1988, federal and state Declaratory Judgment Acts, and Title VII, including the Pregnancy Discrimination Act. Murtagh and her husband are fire fighters who claimed that the Bernalillo County Fire Department ("Defendant" or "County") intentionally discriminated against

Murtagh because of her pregnancy and gender. In addition to the discrimination claims, Plaintiffs alleged supervisory and policy liability under § 1983, breach of implied contract and retaliation against Plaintiffs resulting from John Murtagh's alleged protected speech.

Murtagh contended that Fire Chief Santos Baca had promised if she became pregnant that she would be placed on a 50-hour/week light duty schedule, which was the policy or practice then for any fire fighter who had a temporary disability or need for accommodation. When Murtagh learned she was pregnant in January 1999, Chief Glen Vinke had replaced Chief Baca. Murtagh requested light duty work from Chief Vinke. After consultation with the County's legal counsel regarding FLSA requirements, Chief Vinke authorized light duty status for Murtagh provided she agreed to take a reduction in hours from 50 to 40 hours per week. This caused her a reduction in pay and benefits. Murtagh alleged that similarly situated male and non-pregnant female employees needing temporary light duty work were not required to take a reduction in hours. Murtagh and her husband sued both the County and Jeff Landers, the County attorney who Chief Vinke consulted about the re-assignment.

In early to mid 2001, the parties exchanged written discovery and appear to have taken just under a dozen depositions, including both plaintiffs. There were no discovery motions filed and no discovery hearings. Defendants filed a Motion for Summary Judgment seeking to dismiss the entire complaint and a motion to strike affidavits and written statements submitted by the Murtaghs in their opposition to the request for summary judgment.

On October 30, 2001, this Court granted Defendants' a partial summary judgment. The Court concluded first that the Title VII claims against County attorney Landers could not survive since the "Tenth Circuit, along with virtually every other Circuit," had determined there was no individual

liability under Title VII. The Court also granted summary judgment on the § 1983 and state constitution claims as to individual defendant Landers because there was "no evidence" that any decision Landers made was the result of discrimination. Landers was dismissed.

In addition, summary judgment was granted on the Title VII claims arising out of incidents that fell outside the applicable 300-day statute of limitations since the continuing violation doctrine could not save those claims. The Court denied summary judgment as to the limitation-of-hours Title VII claim, the § 1983 claim, and the state-constitution claim against the County. Finally, the Court granted Defendants summary judgment on John Murtagh's First Amendment retaliation claim and dismissed him. The Court reasoned that there was no evidence to support John's claim and further, the speech at issue did not involve a matter of public concern.

Prior to trial, Defendants filed six motions in limine. Judge Warren Eginton granted three motions completely and a fourth in part. He denied two of the motions. The jury trial was conducted from December 6, 2001 until December 13, 2001. About 25 witnesses testified at trial. The jury rendered special verdict findings that Defendant County had violated Title VII and the Equal Protection Clauses of the federal and state constitutions. The jury awarded Murtagh $35,000 in damages, and the Court awarded Murtagh back pay in the amount of $1,149.29 plus $172.39 in lost benefits. Murtagh's claim for declaratory and injunctive relief was denied.

## Analysis

I.   **ATTORNEYS' FEE DISCUSSION**

   A.   **Pertinent Legal Standard:**

Plaintiffs seek attorneys' fees under 42 U.S.C. §§ 1988 and 2000e-5(k). Provisions for counsel fees in 42 U.S.C. § 1988 were patterned upon fee provisions of § 2000e-5(k), and therefore, the same standard in awarding fees applies. Chicano Police Officer's Ass'n v. Stover, 624 F.2d 127, 130 (10th cir. 1980). Section 1988 provides that in federal civil rights litigation, the court, in its discretion, may allow the prevailing party a reasonable attorneys' fee as part of the costs. A plaintiff who "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" is a "prevailing party." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (*quoting* Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). Here, Defendant does not dispute that Murtagh is a prevailing party for purposes of the recovery of fees. [Doc. 113, p. 1.] Therefore, the Court must determine what constitutes a reasonable fee in this litigation.

The starting point for determining the amount of a reasonable fee is to calculate the number of hours reasonably expended and to multiply that number by a reasonable hourly rate. Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), *abrogated on other grounds by* Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 483 U.S. 711 (1987). The resulting figure is referred to as the "lodestar." Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998).

   B.   **Plaintiff's Application for Attorneys' Fees:**

Attorneys Carolyn Nichols, Shannon Oliver and Kathryn Hammel brought this lawsuit on behalf of the Murtaghs. Ms. Hammel and Ms. Nichols both were pregnant themselves during part of the litigation and planned to spell each other, if necessary, during the litigation. (Hammel Aff. at

4

¶13.) They claim, however, there was no duplication of efforts. All three attorneys for the Murtaghs worked on the lawsuit and have submitted requests for attorneys' fees, each at the rate of $150.00 per hour, for a combined total of 720.13 hours. Nichols and Oliver request a combined total of $108,181.02, which includes $91,864.50 of attorney time (612.43 hours), $816.00 of paralegal time, taxes, and $10,113.47 in expenses. Ms. Hammel requests $17,175.07 in attorney time (107.70 hours), $144.00 in paralegal time, taxes, and $306.32 in expenses. The total fees and expenses requested by all three Plaintiffs' counsel are: $129,773.81; a multiple of 3.5 of Plaintiff's actual judgment.

Plaintiffs state that they do not seek fees or expenses related to John Murtagh's claims dismissed at summary judgment or to claims brought against Defendant Landers, who also was dismissed at summary judgment. In addition, Plaintiffs do not request fees or expenses associated with their unsuccessful claim for equitable relief. Ms. Hammel did not charge for a total of 1.1 hours (.9 attorney time, .2 paralegal time). Ms. Nichols and Ms. Oliver discounted their fee request by 36.5 hours.

In addition, Plaintiffs hired separate fee counsel to prepare the pleadings related to the attorney fee application, and Attorney Phil Davis has supplied affidavits relating to his fees as well. As of the date of the reply brief, Mr. Davis' requested fees are $7,888.70 (31.8 hours x $225/hour), which also includes expenses and taxes. Mr. Davis did not charge for 3.5 hours.

### 1. *Reasonable Expenditure of Hours*:

Plaintiff bears the burden of establishing entitlement to an attorneys' fee award, documenting the appropriate hours expended, and showing that the hours claimed are reasonable. Case. 157 F.3d at 1249-50. In other words, Murtagh must "prove and establish [the] reasonableness of each dollar,

each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995). The Tenth Circuit has made clear that attorneys of prevailing parties who seek attorneys' fees

> must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks-for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint and so on.

Ramos, 713 F.2d at 553. Block billing, or lumping tasks into a single entry of time, while not favored is not *per se* forbidden. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). But courts may discount requested attorney hours if the attorney fails to keep the required records or if the records are sloppy and imprecise. Id.; Jane L., 61 F.3d at 1510.

In addition, the Tenth Circuit recognizes that attorneys typically do not bill a client for every hour expended in litigation, and that attorneys should exercise "billing judgment" regarding the amount of hours actually billed. To show appropriate billing judgment, an attorney should make a good-faith effort to exclude those hours from the request that are excessive, redundant or otherwise unnecessary. Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998). The Court has a corresponding obligation to exclude hours "not reasonably expended" from the calculation. Id.

In analyzing what hours are "reasonably" expended on specific tasks, the court may consider such factors as the "complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." Case, 157 F.3d at 1250. The Court also may examine whether the hours that were expended constituted a duplication of efforts by other attorneys. "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." Id. (*quoting* Ramos, 713 F.2d at 554)). In

making this determination, the court can look to how many attorneys the other side utilized in similar situations. Id.

The Court may accept the lodestar proposed by Plaintiff as the reasonable amount to award or it may adjust the lodestar, depending on the circumstances of the case. *See* Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995). In reducing the lodestar, the Court may elect to discount requested fees by specific billing entry/hour or by making a general reduction of hours "to achieve what the court determines to be a reasonable number." Case, 157 F.3d at 1250 (internal citation omitted); Hensley. 461 U.S. at 436-37 ("no precise rule or formula" required for determining attorney fee awarded to prevailing party)

### *a.     The parties positions:*

Murtagh's support of the requested hours is essentially two-pronged: (1) the time records are sufficiently detailed to demonstrate the time spent was reasonably necessary; and (2) the "excellent results" obtained by Plaintiff should justify the full fee requested.

Defendant asks that the Court consider the extent to which Murtagh failed on some of the issues she raised and further argues that the 720.13 hours billed by all three attorneys was unreasonable in view of the issues in this case. Furthermore, Defendant asserts that some of the time records are not sufficiently detailed to permit a determination of reasonableness and that some of the entries of Plaintiff's counsel are conflicting. Defendant also contends that it was unreasonable to have two attorneys attend the trial when Oliver conducted only voir dire and argued jury instructions. Finally, Defendant contests the reasonableness of Plaintiff's decision to retain separate fee counsel, particularly one like Mr. Davis, who justifiably bills $225 per hour.

In Murtagh's reply, she contends, in part, that Defendant failed to satisfy its burden in identifying with specificity those time entries to which it objects and that Defendant's emphasis on degree of success ignores that she basically "aimed low and hit the target."

### b. *The Court's Findings as to Fees Submitted by Merits' Counsel:*

#### i. *Vague Billing Entries:*

The Court finds that many of the billing records of Ms. Nichols and Ms. Oliver are not sufficiently detailed for the Court to make a fair evaluation of the time expended, along with the nature and need for the service. *See* Hensley, 461 U.S. at 441 (Burger, C. J. concurring). Although Defendant did not isolate and identify each record that was lacking in specificity, the County argued that the brief descriptions of tasks including "conference," "telephone call" and "e-mail" without further information, were insufficient. On the more substantial time entries,[1] the Court agrees and re-emphasizes that Plaintiff bears the burden of documenting the requested hours to show that those hours were necessary and reasonable. Moreover, the Court has an obligation to reduce those hours that were duplicative or not reasonably expended.

While it may be appropriate for co-counsel to collaborate and confer with each other to strategize, billing entries that "simply refer to time spent in 'conference'" do not provide the Court with enough information to show how the time spent was reasonably necessary. Case, 157 F.3d at 1253; Jane L., 61 F.3d at 1510. There are numerous billing entries by Nichols and Oliver that state nothing more than "confer with CAM [Nichols]," "confer with SLO [Oliver]," "e-mail to Katy [or] co-counsel," or something equally vague. *See, e.g.*, billing entry numbers 2868, 22162869, 2221,

---

[1] While the Court can agree with Plaintiff's counsel on the isolated .1 and even some .2 telephone calls, the Court disagrees with Oliver that counsel could not have provided some additional detail on the longer billing entries without waiving a privilege. [Oliver Supp. Aff., Ex. 1 to Doc. 119.]

8

2219, 2223, 2889, 2238, 2239, 2236, 2234, 2235, 2870, 2231, 2233, 2871, 2418, 2419, 2025, 2047, 2105, 2108, and 2422, to name just a "few." [Nichols Affidavit.] Similarly, there are a number of entries stating nothing more that "p/c with client" or p/c with someone else, without additional information. *See, e.g.,* billing entries 2217, 2218, 2220, 2240, 2044, 2273, 2264, 2252, etc. [Nichols Affidavit.] *See also* billing entries for Hammel for dates 6/8/01, 6/19,01, 6/20/01, 6/21/01, 6/25/01, 8/1/01, 8/17/01, 8/20/01, 9/4/01, 9/5/01, 12/14/01. [Hammel Affidavit.] While some of the entries *may* be explained by surrounding entries, many are not illuminated even by literally reading between the lines. Most of the billing entries for vague and/or unspecified conferences and correspondence account for small amounts of time, but when added together total between 20-30 hours.

There are additional confusing and/or improper billing entries. For example, Nichols and Oliver sometimes lump tasks together in a single entry, which while not *per se* prohibited, makes it difficult to determine what amount of time might have been reasonably expended on a certain task. For example, on January 26, 2001, Nichols billed 2.6 for drafting the PDP and IPTR and "attempting to correspond via e-mail w/opposing counsel." [Nichols Affidavit, entry 2234.] The Court cannot determine what amount of time was spent "attempting" to send an e-mail. Moreover, the "attempt" to call counsel or to send e-mail does not constitute appropriate billing judgment in this Court's opinion. *See also* billing entry 2962 ("attempts to communicate with opposing counsel; letters; e-mails; phone calls" totaling .9 ). On June 20, 2001, Nichols billed .6 for reviewing a letter from Hammel, without describing the nature of the letter; this leaves the Court to wonder what type of letter from co-counsel takes 36 minutes to read. Moreover, on the same day, Nichols billed .6 for reviewing a memo "re: defenses by Hammel," thereby raising questions as to whether there were two separate documents from Hammel or just one. The Court also sees the problem with three counsel

9

billing time to learn what actions the others were taking. Due to the imprecise billing entries, the Court also cannot determine if Nichols met with her clients and took notes twice on one day (November 26, 2001) or if the entries might be duplicative. On December 4, 2001, Oliver provides a billing of entry for 4.0 that says merely "preparing" but on the same day provides an entry for 3.0 that says "working on Motion in Limine." On December 14, 2001, Oliver billed some amount of 4.7 in two separate entries to telephone conversations with the press, which does not appear to be appropriate billing judgment. These are only examples of many billing entries that trouble the Court.

### ii. *Other Billing Entries*:

There are several other types of billing entries that the Court finds problematic. With respect to legal research performed, one must provide enough information to determine whether the research was related to successful issues and reasonably necessary to the case. *See* Case, 157 F.3d at 1252-53. On December 3, 2001, a legal assistant/attorney for Plaintiff billed 2.5 hours for "legal research." On September 13, 2001, Oliver billed 3.5 for "research re: summary judgment," although she provided more detailed entries for summary judgment legal research in other entries. This type of imprecise billing information fails to provide the Court with sufficient information to determine the reasonable necessity of the work. Moreover, while Hammel includes 2.4 hours of paralegal time in her total fee request, the Court is unable to locate any specific records, attached to Hammel's affidavit, documenting what tasks that paralegal performed. Similarly, the Court notes that Hammel billed for short conversations with fee counsel Davis and for small amounts of research regarding "Dunton." [Hammel Affidavit, 1/8/02, 12/22/01, 12/28/01.] This information also again raises duplication issues and the Court has not located any references to "Dunton" in post-trial briefs.

In addition, Plaintiff's counsel agreed that it would not request fees for the failed claims brought by John Murtagh or against Landers. The billing records show that some entries related to John Murtagh were "no-charged," but that others were, in fact, charged. For example, Hammel charged .2 on 4/11/01 for a call regarding "John's damages," .4 on 7/2/01 for a call to John Murtagh, .1 on 8/13/01 for a call with John Murtagh, 4.7 on 9/18/01 for "Legal Research and drafting on 1st A claim" (which apparently concerned John Murtagh's failed First Amendment claim), and .1 on 9/21/01 for call with John re: summary judgment. On 8/20/01, Oliver charged .3 for "reading a fax from Katy re: discovery and stipulation of discovery of claims of John Murtagh." In addition, the exhaustion of remedies research billed on 9/7/01 for .7 likely related to the failed claim against Landers.

### iii. *Use of Multiple Attorneys:*

Plaintiff's use of three separate merits' attorneys, during portions of this litigation, raises additional concerns about the reasonableness of some of the hours billed. The Court recognizes time spent by two attorneys on the same general task is not *per se* duplicative, and further that careful preparation may require collaboration between counsel. Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1077 (10th Cir. 1998). The Court also is aware of Plaintiff's reliance on several cases[2] standing for the proposition that it is a defendant's burden to identify, with specificity, which hours submitted are

---

[2]Martinez v. Roscoe, 100 F.3d 121, 124 (10th Cir. 1996) is distinguishable because it dealt with fees in the context of sanctions against a defendant who acted in bad faith. In addition, it is not clear in that case how "general" the defendant's objections to the fee request were. The defendant may have claimed, without more, that the fees were unreasonable. Sheets v. Salt Lake County, 45 F.3d 1383, 1391 (10th Cir. 1995) is also of little support to Murtagh. In Sheets, the Court explained that in the "first place" plaintiff has the burden of producing meticulous time records, which the Court found the plaintiff had done, unlike the circumstances here. It also appeared that the defendants in Sheets did nothing more than argue that the fees were duplicative and exorbitant in nature. Here, the County has pointed to the type of billing entry that is objectionable and has further objected to the reasonableness of having several attorneys sit through trial.

11

excessive or redundant. Still, it is Plaintiff's burden to show how "each dollar, each hour" were reasonable. "The prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" Jane L., 61 F.3d at 1510 (internal citation omitted). Moreover, "a district court may well decide to go below the amount of a fee request put in controversy by the parties – in this sense, the court's discretion is not absolutely constrained by the amount of a fee request put in controversy by the parties." Robinson v. City of Edmond, 160 F.3d 1275, 1285-86 (10th Cir. 1998).

With respect to the use of multiple attorneys, Defendant primarily argues that it was improper for Murtagh to have two counsel present throughout trial when only one of them conducted all witness examination and gave both opening and closing arguments. The Court has reviewed the entries for trial between December 6 and 13, 2001 for Oliver and Nichols. Oliver's entries are less than clear as to what trial time she billed. On December 6, Oliver billed 12 hours including "trial work, arguing motions in limine, research on 1983/policy maker issues, writing witness testimony summaries and the cross-examination of Vinke." On December 7, Oliver billed 10.5 hours; it is not clear which entries related to sitting at the trial, but the quantity of time supports that assumption. On December 10, Oliver billed 9.0 including "jury instruction work, trial summaries for closing statements" and "trial." Oliver's 9-hour entry for December 11 includes jury instruction work and trial notes, etc. Oliver's 12-hour entry for December 12 and 9-hour entry for December 13 are similar. The Court is skeptical that two attorneys were necessary[3] throughout trial when only one of them conducted witness examinations, but, because of their vagueness, it is unable to conclude that

---

[3]If the second counsel was organizing documents and exhibits for witnesses, a paralegal could have served more efficiently. If two were necessary to evaluate and brainstorm on witness examination, billing rates for experienced counsel should be trimmed.

Oliver's billing descriptions of work were totally unnecessary, unreasonable or duplicative. This is particularly true in view of Judge Eginton's praise of both attorneys' work at the end of the trial. *But see* Karnes v. SCI Colorado Funeral Services, Inc., 166 F.3d 347 (10th Cir. 1998) (Tenth Circuit found that the preparation of two attorneys for cross-examination and assistance in jury selection overlapped and warranted reduction of fees).

The Court is, however, more troubled by some of the billings for multiple attorney hours leading up to trial. Generally speaking, "[t]he more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services," and a court should give particular attention to the possibility of duplication in such circumstances. Ramos, 713 F.2d at 554. The Tenth Circuit, in Ramos, held that it would not automatically reduce reported hours to adjust for multiple representation but that the presence of more than one lawyer at depositions or hearings must be justified. Id. n. 4.

Here, on June 21, 2001, Nichols billed .6 for a meeting with SLO and Hammel "re: case and defenses," another .6 on the same day for a "meeting w/co-counsel" and .3 for a phone call with the clients. On June 21, Hammel billed .6 for a meeting with co-counsel and .2 for a call to the client. These entries raise questions regarding how many meetings occurred on June 21, and how many attorneys needed to call the client that day. On June 28, both Nichols and Hammel appear to have billed for Landers' deposition that Hammel defended (1.6 for Nichols, 2.4 for Hammel). Both also seemed to have prepared for the same deposition (1.1 for Nichols, 3.5 for Hammel). Both Nichols and Hammel billed for the deposition of Trujillo (2.8 for Nichols, 2.7 for Hammel), yet only one attorney defended it. It appears that the County used only one attorney in depositions, hearings and

at trial. *See* Case, 157 F.3d at 1250 (court looks to how many attorneys the other side employed in comparable situations).

Further, on August 1 and 2, two attorneys billed for writing the settlement letter (.9 for Hammel, 1.2 for Oliver). On August 22, Nichols and Oliver have identical entries, each for 3.5 hours related to research and preparation for settlement conference and possible summary judgment response. On October 3, 2001, the entries for Oliver and Nichols both include meetings with witnesses. All of these entries seem to reflect duplication of effort or billing.

Numerous hours were expended by all three attorneys on the Pre-Trial Order ("PTO") and by two attorneys on the response to the motion for summary judgment. For example, Hammel billed 5.9 related to PTO work. Nichols billed about 4.9 on PTO work, and Oliver billed 1.3. With respect to the opposition to summary judgment, Oliver billed some portion of 27 hours on it, and Nichols billed some portion of 35 hours on it. The exact amounts for either cannot be determined due to multiple tasks included in a single entry. It is difficult to believe that a substantial duplication of efforts did not occur regarding the PTO and the summary judgment work, with the entry of this quantity of hours.

Both Nichols and Oliver billed what appear to be several hours or more to draft a two paragraph statement of the case. [Nichols Aff., 2459, 2379, 2380, 2381, 2383.] Oliver submitted approximately 20 hours for work on the responses to the motions in limine but three of the five responses were two pages or less.

This simply is not the type of complex case that required this type of billing or the use of multiple attorneys in each of the matters identified above. The questions do not appear to have been

novel, difficult or out of the ordinary. Many of Murtagh's claims were dismissed at summary judgment, thereby further simplifying trial preparation and the trial itself.

Moreover, this is not a case where the record shows that Defendant's aggressive tactics or antics created a need for increased expenditures of time by Murtagh's attorneys. The pleadings appear to reflect cooperation among counsel throughout the litigation. For example, counsel reached agreement on 19 stipulated facts in the IPTR. Indeed, if the costs of litigation were increased, it was caused by Plaintiff when she listed 98 "may call witnesses" in the PTO, submitted unsworn witness statements in response to the summary judgment motion prompting a motion to strike, and submitted a jury instruction on the issue of a continuing violation, which the Court already had rejected, thereby prompting a further motion in limine.

*iv.     Limited Success:*

A court may make adjustments to the requested fees based on a plaintiff's overall success.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

Hensley, 461 U.S. at 435-36, 103 S. Ct. at 1940-41. The Hensley opinion cautions, however, that when making adjustment for "excellent results" or "limited success," "the court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id. at 436-37. While there is no rigid formula to use in making this determination, the focus of the court should be on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435.

15

Murtagh argues that her success was great, that she achieved "excellent" results, and that she met her goal of "vindicat[ing] federally guaranteed rights . . . ." She also asserts that in assessing the "degree of success" she attained, the Court must look at the recovery she sought as compared to the recovery she obtained. [Reply at p. 9.]

At trial, Murtagh was successful on her primary claim of pregnancy and/or gender discrimination. She established that she was placed on modified work duty at forty hours per week, while similarly situated non-pregnant employees (both female and male), on modified duty, worked 50-53 hours per week. The jury awarded $35,000 in compensable damages. Her hard damages were less than $2,000. Her complaint, however, does appear to have prompted the County to limit the modified duty work schedule for all similarly situated firefighters to a 40 hour week. Murtagh was unsuccessful on several other claims at the summary judgment stage, and agreed to drop her implied contract claim in her response to the summary judgment motion. Her request for equitable relief was denied. While some of her claims, like the failed First Amendment claim, are clearly distinguishable from the Title VII/§ 1983 claims, the latter are largely interwoven.

The Court agrees that Murtagh prevailed on a significant legal issue, that of disparate treatment gender/pregnancy discrimination, and that no illegal discrimination can be tolerated in the workplace. However, the Court does not characterize this as a landmark discrimination case with far-reaching effects. The end result of Murtagh's efforts, in addition to gaining a monetary award for herself, was that all similarly situated firefighters on light work status are now allowed to work only a 40-hour week, not the 50-hour work week Plaintiff sought.

As suggested by fee counsel, the Court also should examine the difference between the relief sought by Murtagh and the damages, etc. recovered. *See* Barber v. T.D. Williamson, Inc., 254 F.3d

16

1223,1230 (10th Cir. 2001) (employing the factors outlined by Justice O'Connor's concurrence in Farrar v. Hobby, 506 U.S. 103, 116-22 (1992), in determining reasonableness of a fee award). Murtagh's complaint requested compensatory and punitive damages, although the punitive damage request apparently was linked to Defendant Landers' alleged conduct. She also sought injunctive or equitable relief. When viewed in terms of Plaintiff's substantial demands, request for punitive damages as to Landers, who was dismissed, and the request for equitable relief, which was denied, the Court must therefore conclude that Murtagh's success was definitely only "partial" or "limited" and that full fees are not warranted, based on this criteria.

Therefore, the Court finds that based on imprecise and vague billing entries, as described in detail above, along with Murtagh's limited overall success, the number of attorney fee hours requested by merits counsel should be reduced by 35% in order to arrive at a reasonable fee given the circumstances of this litigation.

### *c.* *The Court's Findings as to Fees Submitted by Fee Counsel:*

Plaintiffs' counsel are entitled to attorneys' fees for time spent preparing a fee application. Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1205 (10th Cir. 1986); Love v. Mayor of Cheyenne, 620 F.2d 235, 237 (10th Cir. 1980). Moreover, the Court agrees with defense counsel that Mr. Davis' is an excellent and experienced attorney in this area, and no one questions the amount of time he billed nor his billable rate. What the Court questions, however, is why separate counsel, with this degree of expertise, was required. Again, this case did not present novel or complex legal or factual issues. This is not the type of fee litigation, for example, that generated substantial discovery and cutting edge legal issues. Plaintiff's counsel are more likely to prevail by relying on accurate and detailed time records than expert testimony. *See* Case, 157 F.3d at 1254-55 (discussion

17

that denial of excessive or unreasonable fees associated with preparing a fee request could be proper). There was only one dispositive motion filed, and no discovery motions filed. Counsel appeared to cooperate with each other, rather than engage in contentious interactions, and this case proceeded to trial in a relatively streamlined fashion. These circumstances do not support the use of separate, highly experienced fee counsel. *Compare* Kusp v. Johnson, 712 F. Supp. 571 (W.D. Mich. 1989). This is particularly true when Plaintiff's counsel filed fee affidavits by Maureen Sanders and Randi McGinn, both of whom are experienced civil rights litigators. In addition, part of the Court's concern with the fee request by Mr. Davis of almost $8,000.00 is the fact that all three trial counsel also billed a number of hours for discussions about the fee request. *See, e.g.,* Hammel Aff. (3/4/02, 3/5/02, 3/6-3/25/02; Nichols Aff. (billing entries 2389, 2385, 2388, 2500, 2502, 2518, 2948, 2504, 2936, 2523, 2949, 2879, 2872, 2955, 2966, 2967, 2968, 2969, 2970, 2971, 2972.) Because the Court concludes that the use of highly experienced fee counsel was unnecessary under the circumstances here, the Court will also reduce the number of hours requested by Mr. Davis by 35%.

### 2. **Reasonable Hourly Rates**

The setting of a reasonable hourly rate is within the district court's discretion. In determining the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards the fee." Ramos, 713 F.2d at 555. A reasonable hourly rate should comport with the rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984).

18

Here, trial counsel each request a rate of $150.00 per hour, and Davis requests $225.00 per hour. The Court concludes that the proposed rates of Hammel and Davis are reasonable based on the prevailing market rate in this community and the skill/experience level of these attorneys. The Court will reduce the requested rate of Oliver and Nichols to $135 per hour. In support of this decision, the Court notes that in 1998, Oliver and Nichols worked together on a civil rights case before this Court in which they requested $125 per hour. Both conceded at the time that they had limited experience in federal court, and the Court determined that $115.00 was fair compensation for both attorneys who then had less than five years legal experience. Freeman v. Acosta, No. CIV 96-1516 BB/JHG. Neither attorney's affidavit reveals a significant amount of additional litigation experience since the Freeman case.

The Court finds the paralegal time reasonable and indeed is of the opinion a good deal more could have been done by paralegals.

**C.     Attorneys' Fees Award**

Based on the above-stated findings, the fee award is calculated as follows (data taken from Memo in Support of Fee Request and Davis Affidavits):

| | | |
|---|---|---|
| Oliver and Nichols: | 65% of 612.43 hours (398.0795) X $135/hr | = $53,740.73 |
| Hammel: | 65% of 107.70 hours (70.005) X $150/hr | = $10,500.75 |
| Davis | 65% of 31.8 hours (20.67) X $225/hr | = $ 4,650.75 |
| Paralegal time | 16 hours (total) X $60/hr | = $    950.00 |
| | TOTAL (not including taxes and expenses): | = $69,842.23 |

Dated at Albuquerque this 11th day of July, 2002.


_____
**BRUCE D. BLACK**
United States District Judge


Counsel for Plaintiff:

    Carolyn M. Nichols, Shannon L. Oliver, NICHOLS & OLIVER, Albuquerque, NM
    Kathryn A. Hammel, Albuquerque, NM
    Philip B. Davis, Albuquerque, NM

Counsel for Defendant:

    Agnes F. Padilla, BUTT THORNTON & BAEHR, Albuquerque, NM